PEOPLE v. JACKSON.

CRIMINAL LAW—ATTORNEY GENERAL'S OPINION—CONFRONTATION OF WITNESSES—TURNING OVER COURT RECORDS TO SUCCESSOR IN OFFICE.

It was not error in prosecution of justice of the peace for failure to turn over court records to successor in office for prosecution to read to jury, without calling the attorney general to the stand, a letter from the attorney general to the auditor general relative to such transfer of records, where the letter which had been examined by defendant when his successor made demand for the records was thus presented to jury for the sole purpose of illustrating the nature and circumstances of the discussion between the parties at the time of the demand and not for the purpose of showing what the law was (CL 1948, § 750.480).

Appeal from Monroe; Weipert, Jr. (William J.), J. Submitted June 9, 1960. (Docket No. 39, Calendar No. 48,313.) Decided September 16, 1960.

William H. Jackson, a justice of the peace, was convicted of refusal to turn over court records to his successor in office. Affirmed.

*Williamson & Sawyer* (*Robert N. Sawyer*, of counsel), for defendant.

REFERENCES FOR POINTS IN HEADNOTES
20 Am Jur, Evidence § 954.

SMITH, J. This case involves the failure of one justice of the peace to transfer complaints and warrants to his successor in office.

The defendant, William H. Jackson, justice of the peace for Frenchtown township, Monroe county, was defeated at the polls in the 1957 spring election by James J. Basile.

Prior to Basile's taking office the defendant transferred approximately 700 cases to other justices of the peace in other townships in the county. Consequently, when the newly-elected justice, Basile, assumed office it was depleted of large numbers of cases. Those remaining were turned over to him. Demand (actual or constructive) for the balance was made at this time.

Defendant, however, reassumed office by reason of appointment, on August 13, 1957, to succeed the late John Bayne, also a justice of the peace for Frenchtown township. The cases formerly transferred by defendant to other justices of the peace were then retransferred to him and were in his possession and control on February 18, 1958. At this time further demand was allegedly made upon defendant for the files and records so transferred and retransferred, which demand was again refused. Following this incident Basile signed a criminal complaint, on the basis of which a warrant was issued and trial had, resulting in defendant's conviction and sentence.* We granted leave to appeal, our review being limited to the question "Whether receipt in evidence of the copy of the attorney general's opinion (dated Febru-

---

\* Section 480 of the Michigan penal code provides:

"Any officer or agent of this State or of any county, city, village, township or school district within the State, into whose hands money, books, papers, evidence of debt or other property shall come by virtue of his office or agency, who shall wilfully refuse or neglect, on demand, to deliver the same to his successor in office or to the person authorized by law to receive or have charge of the same, shall be guilty of a felony." CL 1948, § 750.480 (Stat Ann 1954 Rev § 28.748).

ary 10, 1958) and reading of same to the jury con-
stituted reversible error?"

We will so restrict our discussion of the case. The
question put arises in this way: It was Basile's con-
tention that upon February 18, 1958, when defendant
had in his hands again the files and records he had
transferred, he refused to deliver them, although a
demand therefor was made. The making of this
demand, we note, was vigorously denied by defend-
ant. In support of his version of the incident, Basile
asserts not only that he made a formal demand, but
that he showed defendant the letter in question, that
defendant scanned it page by page, as though read-
ing it, and returned it to him with certain remarks.
All of this was put before the jury, including the
contents of the letter itself.

Appellant objects that the reading of the letter
to the jury was reversible error in that it violated
the defendant's right of confrontation with the wit-
nesses against him (the attorney general was not
produced), that the letter was not "proved to be an
official record, nor is it nor was it proved to be a
record made in the regular course of business," nor
was it expert opinion, but rather "unfair and preju-
dicial hearsay," that it usurped the function of the
court in declaring the law, and that undue emphasis
was placed upon it as having its origin in "some
higher, recognized authority," following an official
investigation.

All of this overlooks the purpose for which the
letter was employed and the restrictions placed upon
it by the circuit court in permitting it to be received
into evidence. It was neither offered nor received
as evidence of guilt or innocence, or of establishing
the law applicable. It was tendered and accepted
for the sole purpose of illustrating the nature and
circumstances of the discussion between the parties
at the time of the alleged but controverted demand

made on February 18th. As the circuit judge put it in his opinion denying the motion for new trial (the emphasis is that of the circuit judge):

"Ground 6 misstates the reasons and limitations under which evidence concerning the copy of a communication from the attorney general to the auditor general was admitted. Such was admitted, not to show what the law concerning the turning over of justice court cases was—the court carefully ruled that out—but solely as relating to the complaining witness' claim that he *did* make demand on defendant, basing such demand on *his* version of the law, right or wrong, and that defendant knowing what such demand was spurned it. Reference to the attorney general's letter was allowed for whatever light it might or might not shed on those questions only; the court instructed fully on the subject and the letter was not allowed to be taken into the jury room.

"To say that its limited and indeed necessary use violated the constitutional right of defendant to be confronted with witnesses would be to say, if the complaining witness had instead showed defendant a copy of the statute books (which would have served the same purpose) that he should produce in court the members of the legislature enacting the statute. To say that it was inadmissible 'as a public record without proof of its official character' ignores the fact that no official standing was claimed or granted it."

We find no error in the case. Affirmed.

DETHMERS, C. J., and CARR, KELLY, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.